IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MICHAEL WIDMER, # B-30985,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 12-cv-1261-MJR |
| ) | |
| **TYRONE BATES, MARCUS HODGE,** ) | |
| **CECIL, RAY, ERICKSON,** ) | |
| **SHEHORN, GOINS, WHEELER,** ) | |
| **STAHLEY, MARTIN, BAYLER,** ) | |
| **FREEMAN, TREADWAY, LINGLE,** ) | |
| **and VAUGHN,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff, currently incarcerated at Lawrence Correctional Center ("Lawrence"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The complaint outlines at least six distinct claims, most of them involving only some of the fifteen Defendants. Further, the claims do not all arise from the same transaction or occurrence, or series of transactions or occurrences. Thus, some of the claims shall be severed into separate actions. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (separate, unrelated claims belong in different suits); *see also* FED. R. CIV. P. 20(a)(2). The synopsis below tracks the claims as presented in Plaintiff's complaint.

Count 1: Plaintiff first claims that he suffers from an eye disorder that causes blurred vision and headaches (Doc. 1, p. 5). He requested treatment from Defendant Martin (the Lawrence Medical Director) over six months before filing this complaint, during which time he has injured himself due to his inability to see. However, Plaintiff never received any medical

attention for this problem.

Count 2:  On July 25, 2012, Plaintiff was transferred to Stateville Correctional Center ("Stateville") on a court writ.  As he boarded the bus, Defendant Bayler took Plaintiff's legal papers and other property from him, and discarded this property.  Plaintiff spent 50 days at Stateville without his legal documents.  He thus was unprepared for his court appearances on felony charges as well as in a child custody matter.  He was "forced" to enter a guilty plea to two felonies because of important evidence that was destroyed by Defendant Bayler, and his ability to fight for custody of his son was impaired (Doc. 1, p. 6).

Count 3:  In September 2012, Plaintiff returned from Stateville to Lawrence with two medical permits – one for a low bunk and the other for double portions of meals (Doc. 1, p. 7).  These were a result of having been seriously injured in an assault while at Stateville.  On September 17, 2012, Defendant Shehorn ordered Plaintiff to move to the top bunk in his cell.  When Plaintiff protested that he had a special medical permit and asked to speak to a crisis team member, Defendant Stahley responded.  Defendants Stahley and Shehorn decided to place Plaintiff in a "strip cell," despite his protests that he was not suicidal nor on any psychiatric medications.  He spent five days in the strip cell.  Plaintiff filed a grievance against Defendant Shehorn over this incident.  In retaliation for filing this grievance, on October 1, 2012, Defendant Shehorn cancelled Plaintiff's double portions permit and wrote a false disciplinary report on Plaintiff.  The false report was expunged on October 4, but the double portion permit, which would have continued until October 8, was not restored.  As a result, Plaintiff suffered weight loss, stomach pains, and dizziness.

Plaintiff adds that he was held in a cell in total darkness from November 3 to November 9, 2012, by Defendants Hodge (the Lawrence Warden), Bayler, and Vaughn (Doc. 1,

p. 8; *see* Doc. 1-1, pp. 18-20).

Count 4:  On October 7, 2012, Defendant Freeman issued Plaintiff a disciplinary report for disobeying an order, after Plaintiff mailed a legal motion to the mother of his child regarding a pending custody case (Doc. 1, p. 8).  Plaintiff had been notified by Correctional Officer DeWeese (who is not a Defendant) that the child's mother had requested no further contact from Plaintiff, however, court-related communications were exempt from the no-contact order.  Defendant Goins conducted the hearing on this disciplinary charge on October 9, 2012, and refused to call Plaintiff's witness or allow Plaintiff to submit a written statement in his defense.  Further, Defendant Goins falsified the hearing summary by forging Defendant Wheeler's name on it.  Plaintiff was punished with two months of segregation (during which he could not have visitation with his son) and three months C grade.

Count 5:  Between June and December 2012, many of Plaintiff's meal trays arrived cold or with portions missing (Doc. 1, p. 9).  On September 27, 2012, Plaintiff observed a set of lunch trays sitting outside in the rain, exposed to insects and birds.  Defendant Erickson tried to cover up the incident.  Plaintiff filed grievances, but did not get satisfactory responses, nor did Defendants Hodge, Treadway, Erickson, or Wheeler investigate his many complaints. Further, Plaintiff claims he has been malnourished by Defendants Hodge and Lingle (the Lawrence Food Supervisor): he has lost weight, suffered stomach cramps, and his hair has started falling out (*See* Doc. 1-2, pp. 8-15).

Count 6:  Between June 19, 2012, and December 10, 2012, Defendant Cecil (the mailroom supervisor) has withheld, destroyed, or lost Plaintiff's incoming and outgoing personal mail, as well as legal and privileged mail (Doc. 1, p. 10).  Plaintiff reported incidents of mail being delivered to him from 18 days to as much as 60 days after the date of mailing, and of

legal/privileged mail being opened outside his presence and delivered up to 21 days after the postmarked date. Plaintiff missed filing deadlines in several court matters. In addition, Defendant Cecil stole greeting cards and envelopes from Plaintiff, preventing him from communicating with his family and friends (*See* Doc. 1-2, pp. 18-25; Doc. 1-3, pp. 1-24).

In addition to seeking damages, Plaintiff requests injunctive relief and asks for a prompt hearing for a TRO (temporary restraining order) because he is "being injured daily by defendants" (Doc.1, p. 11). However, Plaintiff did not file any motion for a TRO or preliminary injunction, nor does he specify what conduct he seeks to enjoin.

Under 28 U.S.C. § 1915A, the Court is required to conduct a prompt threshold review of the complaint. Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated a colorable federal cause of action against Defendant Martin for deliberate indifference to medical needs (Count 1); against Defendant Bayler for interference with his access to the courts (Count 2); against Defendant Shehorn for retaliation (Count 3); against Defendants Hodge and Lingle for failure to provide a diet sufficient to prevent weight loss and symptoms of malnutrition (Count 5); and against Defendant Cecil for interference with personal and legal mail, and denial of access to the courts (Count 6). However, the allegations in Count 4 (deprivation of a liberty interest without due process) fail to state a constitutional claim upon which relief may be granted, and this count shall be dismissed. In addition, several Defendants mentioned in Counts 1, 3, 5, and 6 shall be dismissed for failure to state a claim against them.

**Dismissal of Count 4**

In Count 4, Plaintiff complains that he was punished with two months in segregation following an improperly conducted hearing. Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the

charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical and/or documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner.  *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988).  In addition to the procedural protections in *Wolff*, the decision of the disciplinary hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994).  To determine whether this standard has been met, courts must determine whether the decision of the hearing board has some factual basis.  *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000).  In this case, Plaintiff included a copy of the Inmate Disciplinary Report (Doc. 1-2, p. 4), which shows that his guilty finding was supported by the evidence that Plaintiff violated the ban on contact by including personal comments on the legal document he sent to his child's mother.

Plaintiff complains that in his hearing, Defendant Goins refused to call his witness and refused to accept the documents he offered in his defense.  While these may be violations of the protections outlined in *Wolff*, that is not the end of the inquiry.  First, punishments such as a demotion in grade do not amount to a constitutional deprivation, even when they are imposed after a flawed hearing process.  *See, e.g., Thomas v. Ramos,* 130 F.3d 754, 762 n.8 (7th Cir. 1997).  Secondly, a term of disciplinary segregation may not rise to the level of a constitutional deprivation of a liberty interest, depending on the length of disciplinary confinement and the conditions of that confinement.  *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009).

When a plaintiff brings an action under § 1983 for procedural due process

violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). For prisoners whose punishment includes being put in disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). The Seventh Circuit has recently elaborated two elements for determining whether disciplinary segregation conditions impose atypical and significant hardships: "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion*, 559 F.3d at 697-98 (emphasis in original).

      The first prong of this two-part analysis focuses solely on the duration of disciplinary segregation. For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence"). In these cases, the short duration of the disciplinary segregation forecloses any due process liberty interest regardless of the conditions. *See Marion*, 559 F.3d at 698 ("we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement").

      In the case at bar, Plaintiff was sentenced to only 60 days of disciplinary segregation. Under the authority referenced in *Marion*, this is not a long enough period of time

to require factual inquiry into the conditions of segregation. Furthermore, the complaint is devoid of any indication that the segregation conditions presented an atypical or significant hardship. Accordingly, Plaintiff fails to state a constitutional claim for the conduct of the disciplinary hearing or the resulting punishment. Count 4 shall be dismissed with prejudice.

**Defendants to be Dismissed**

In Counts 1 and 6, Plaintiff recites that he voiced complaints and wrote grievances complaining about the unconstitutional conduct of Defendants Martin and Cecil, respectively. Similarly, in Count 5, Plaintiff filed grievances over the food trays being left outdoors by an unknown prison worker. However, the fact that a counselor, correctional officer, or even a supervisor received a complaint about the actions of another individual does not create liability. In order to be held individually liable, a defendant must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Thus, Plaintiff has no claim in Count 1 against Defendants Treadway and Hodge, merely because he complained to them about Defendant Martin's failure to treat his eye disorder. Furthermore, if a prisoner is under the care of prison medical professionals, non-medical prison officials such as Defendants Treadway and Hodge "will generally be justified in believing that the prisoner is in capable hands." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). "A layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference; it is just a form of failing to provide a gratuitous rescue service." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). For these reasons, Plaintiff fails to state a cognizable claim against Defendants Treadway and Hodge in Count 1.

Likewise, Plaintiff states no constitutional claim against Defendants Erickson, Wheeler, or Treadway in Count 5, or against Defendants Hodge, Treadway, Vaughn, Shehorn, or Erickson in Count 6, merely because he complained to them about the food handling and mailroom problems. No claim arises against these Defendants for their failure to respond to the grievances or to investigate Plaintiff's complaints. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim"). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).

As noted above, Plaintiff's claim in Count 5 against Defendants Hodge and Lingle for failure to provide him with a nutritionally adequate diet shall be given further consideration. However, as to his Count 5 allegations that food was left outdoors exposed to the elements, Plaintiff fails to allege that Defendants Hodge, Erickson, Wheeler, or Treadway was personally responsible for the mishandling of the food trays. He similarly has no claim that Defendants Hodge, Treadway, Vaughn, Shehorn, or Erickson was personally involved in the loss, delay, or destruction of his mail that was allegedly perpetrated by Defendant Cecil in Count 6. Plaintiff does mention that other John or Jane Doe Defendants participated in the mail obstruction, and he may proceed against them in the severed claim designated as Count 6 if he is able to identify them by name.

In Count 3, the complaint states no claim against Defendant Stahley for retaliation or any other constitutional violation. Plaintiff alleges only that Stahley approved his placement in a strip cell, which does not violate the constitution. In addition, Plaintiff's statement in this count that he was "held in a cell in total darkness" by Defendants Hodge, Bayler, and Vaughn

fails to rise to the level of a constitutional violation. The grievances included as exhibits (Doc. 1-1, pp. 18-20) show that there was a delay of several days in replacing a burned-out light bulb; there is no plausible allegation that any Defendant knowingly disregarded a serious risk of harm to Plaintiff in connection with this incident. *See Rhodes v. Chapman,* 452 U.S. 337, 347 (1981) (an Eighth Amendment conditions claim must allege a prison official's deliberate indifference to an unquestioned and serious deprivation of basic human needs, or of the minimal civilized measure of life's necessities); *Caldwell v. Miller*, 790 F.2d 589, 600-01 (7th Cir. 1986) (temporary discomfort or inconvenience do not implicate the constitution).

Finally, Plaintiff lists Tyrone Bates (a Deputy Director of the Illinois Department of Corrections) and Counselor Ray among the Defendants, but makes no allegations against either of them in the body of the complaint. Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2). Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Accordingly, Defendants Bates and Ray will be dismissed from this action without prejudice.

**<u>Severance of Claims</u>**

In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure

that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George,* 507 F.3d at 607, (citing 28 U.S.C. § 1915(b), (g)). None of the surviving counts in this action (Counts 1, 2, 3, 5, and 6) are factually related to one another, nor do these counts share any common Defendants. Accordingly, Count 1 against Defendant Martin shall remain in the instant action, and Counts 2, 3, 5, and 6 shall each be severed, creating four new actions. Each new action shall be assigned a new case number, and a separate filing fee will be assessed for each new case. However, Plaintiff shall have an opportunity to voluntarily dismiss any of the four severed cases (Counts 2, 3, 5, or 6) if he does not wish to proceed on those claims or incur the additional filing fees.

**Pending Motion**

Plaintiff's motion for service at government expense (Doc. 3) is **GRANTED IN PART AND DENIED IN PART.** Service shall be ordered below for Defendant Martin in this action. No service shall be ordered on the remaining Defendants in the claims to be severed until after the deadline for Plaintiff to advise the Court on whether he wishes to proceed with those claims. The dismissed Defendants shall not be served with process.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT 4** (deprivation of a liberty interest without due process) is **DISMISSED** with prejudice. Defendants **BATES** and **RAY** are **DISMISSED** from this action without prejudice. Defendants **ERICKSON, GOINS, WHEELER, STAHLEY, FREEMAN, TREADWAY,** and **VAUGHN** are **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's claims in **COUNTS 2, 3, 5, and 6,** which are unrelated to the deliberate indifference claim in Count 1, are each **SEVERED** into

four separate new cases.  Those new cases shall be:

1) Claims against **DEFENDANT BAYLER** for interference with access to the courts (Count 2 herein);

2) Claim against **DEFENDANT SHEHORN** for retaliation (Count 3 herein);

3) Claims against **DEFENDANTS HODGE** and **LINGLE** for failure to provide a nutritionally sufficient diet (Count 5 herein); and

4) Claims against **DEFENDANT CECIL** and **JOHN DOE/JANE DOE DEFENDANTS** for interference with personal and legal mail, and denial of access to the courts (Count 6 herein).

The new cases **SHALL BE ASSIGNED** to the undersigned District Judge for further proceedings.  In each of the new cases, the Clerk is **DIRECTED** to file the following documents:

(1)   This Memorandum and Order;

(2)   The Original Complaint (Doc. 1) and exhibits;

(3)   Plaintiff's motion to proceed *in forma pauperis* (Doc. 2).

Plaintiff is **ADVISED** that if, for any reason, he does not wish to proceed with any or all of the newly-opened cases, he must notify the Court in writing within 35 days (on or before February 11, 2013), specifying which case(s) he wishes to voluntarily dismiss.  Unless Plaintiff notifies the Court that he does not wish to pursue the newly opened actions, he **will be responsible for an additional filing fee** of $350 in each new case.  Service shall not be ordered on any Defendants in the severed cases until after the deadline for Plaintiff's response.

**IT IS FURTHER ORDERED** that the *only claim remaining in this action is COUNT 1 against Defendant MARTIN*, for deliberate indifference to Plaintiff's serious eye

condition.  This case shall now be captioned as: **MICHAEL WIDMER, Plaintiff, vs. MARTIN, Defendant.**

**IT IS FURTHER ORDERED** that Defendants **BAYLER, SHEHORN, HODGE, LINGLE and CECIL** are **TERMINATED** from *this* action with prejudice.

As to **COUNT 1**, which remains in the instant case, the Clerk of Court shall prepare for Defendant **MARTIN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff.  If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every further pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of any document was served on Defendant or counsel.  Any

paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to **United States Magistrate Judge Williams** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 36(c), *should all the parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1).

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 7, 2013**

s/ MICHAEL J. REAGAN  
United States District Judge
